OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601
T. 201.265.6400   F. 201.265.0303

1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T.212.354.0111

January 13, 2020

**VIA ECF**

Honorable Pamela K. Chen
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Freeman, et al. v. HSBC Holdings plc, et al.*, **18-cv-7359 (PKC)(CLP)** ("*Freeman II*")
            *Bowman, et al. v. HSBC Holdings plc, et al.*, **19-cv-2146 (PKC)(CLP)** ("*Bowman*")

Dear Judge Chen:

      Plaintiffs respectfully submit this letter in accordance with the Court's Orders of December 2 and 18, 2019. Plaintiffs recognize that the Court expects the parties' letters primarily to facilitate the prompt dismissal of the *Freeman II* and *Bowman* complaints on the same bases on which the Court previously dismissed *Freeman, et al. v. HSBC Holdings plc, et al.*, 14-cv-6601 (PKC)(CLP) ("*Freeman I*"), so that they can be consolidated with *Freeman I* on appeal. Plaintiffs therefore simply list and summarize their principal contentions, instead of burdening the Court with an abridged brief.

**<u>Primary Liability for Conspiracy and for Aiding and Abetting Under 18 U.S.C. § 2333(a)</u>**

1. Defendants' undisputed conspiracy with Iran and Iranian banks to disguise and conceal unlawful transactions with those banks to evade U.S. sanctions that the U.S. government has declared were intended to deny Iran "access to the international financial system … to facilitate its support for terrorism and proliferation," was <u>not</u>, as a matter of law, *separate and distinct* from Iran's undisputed conspiracy to disguise, conceal, and provide funding for terrorism, involving the same parties and deceptive techniques. *See Freeman I*, 2019 WL 4452364, at *13 (E.D.N.Y. Sept. 16, 2019). The substantial overlap of conspirators and techniques during the same overlapping time period makes it plausible that Defendants were part of Iran's conspiracy to support terrorism.

2. The Second Circuit's proximate cause analysis delineated in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), applies only to the overt act of any one conspirator for Plaintiffs' *conspiracy* claims, and not to the individual acts of *each* defendant in that conspiracy. Conspiracy liability only requires "an injury caused by an unlawful overt act performed by *one* of the parties to the agreement." *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983) (emphasis added). *See also id.* ("[t]he prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity," whereas "[a]iding and abetting focuses on ... 'substantial assistance'"). Thus, whether a defendant's *own* conduct substantially assisted or was a "substantial factor in the

    sequence of responsible causation," *Rothstein*, 708 F.3d at 91, is irrelevant to a conspiracy claim.

3. Plaintiffs are *not* required to allege that Defendants specifically "*inten[ded]* that th[eir] services would ultimately benefit a terrorist organization," *Freeman I*, 2019 WL 4452364, at *13 (emphasis added), in order to plausibly allege that Defendants joined a conspiracy in violation of 18 U.S.C. §§ 2339A or 2339B. Such conspiracies only require that a defendant *know* that an object of the conspiracy is to provide or conceal and disguise the provision of funds (1) to be used in preparation for or carrying out terrorist attacks (§ 2339A) or (2) to a Foreign Terrorist Organization, whatever the purpose (§ 2339B (with limited exceptions not relevant here)). Neither statute requires intent in the sense of a desire that such an outcome be accomplished.

4. Whether Plaintiffs' claims for primary civil liability predicated on violations of 18 U.S.C. § 2332d by Defendants HSBC Bank USA, N.A., Standard Chartered Bank, Royal Bank of Scotland, N.V., and Commerzbank AG are "so closely linked to dangerous and violent conduct by terrorist organizations as to satisfy § 2331(1)'s definitional elements," *Freeman I*, 2019 WL 4452364, at *15 n.30, cannot be decided as a matter of law when these Defendants acted continuously, deliberately, and collusively with their Iranian counterparts to violate U.S. counter-terror financing sanctions over a period of years and repeatedly demonstrated their awareness of their criminal jeopardy and their counterparts' involvement in terror financing. The Second Circuit held that whether banking conduct – particularly when that conduct is arguably not "routine" – qualifies as acts of international terrorism "raises questions of fact for a jury to decide." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018).

**Secondary Liability of All Defendants for Conspiracy and for Aiding and Abetting Under 18 U.S.C. § 2333(d)(2)[1]**

5. Section 2333(d)(2) does not require that Defendants conspire "directly" with the same Foreign Terrorist Organization that "committed, planned or authorized the attack," where the plain words of the statute do not contain the word "directly," the plain words "conspire with" embrace the common law understanding of civil conspiracy (which does not require that each conspirator deal directly with, or even know the identity of, each co-conspirator), and the statute's Findings and Purpose expressly declares the statute's intent to broaden liability to those who "provide[] material support, directly *or indirectly*, to foreign organizations or persons that engage in terrorist activities against the United States." 18 U.S.C. § 2333 note, § 2(a)(7) (emphasis added).

6. The *Rothstein* "substantial factor in the sequence of responsible causation" standard for primary civil liability under 18 U.S.C. § 2333(a) is not the applicable causation standard

---

[1] Plaintiffs have consistently maintained that each of their conspiracy and aiding and abetting claims in *Freeman I* predicated on primary liability should also be treated as secondary liability claims under § 2333(d)(2) once JASTA was enacted. This also applied specifically to the sixth and seventh claims for relief in *Freeman I* (the material support/aiding and abetting claims against Commerzbank and Standard Chartered Bank) which were formally pleaded as § 2333(d)(2) aiding and abetting claims in *Freeman II* and *Bowman* (also including aiding and abetting claims against the other Defendants).

for secondary liability claims under 18 U.S.C. § 2333(d)(2). *See Linde*, 882 F.3d at 331. ("After JASTA, plaintiffs …. can now urge Arab Bank's liability on the alternative theory that it aided and abetted acts of terrorism by others, *which acts caused* plaintiffs' injuries.") (emphasis added).

7. Whether the National Iranian Oil Company ("NIOC"), an agent of the IRGC (designated a Foreign Terrorist Organization in part for attacks on, *inter alia*, Plaintiffs), Mahan Air and other designated Iranian entities may not "exist solely for terrorist purposes," *Freeman I*, 2019 WL 4452364, at * 17, is not the correct standard for determining whether Defendants aided and abetted Hezbollah or the IRGC by substantially assisting these IRGC-affiliated entities. Furthermore, the *Freeman II* and *Bowman* complaints plausibly allege that these entities are IRGC agents, relying on U.S. government findings that Iran uses "terrorism as a central tool of its statecraft" and the "IRGC is integrally woven into the Iranian economy, operating institutions and front companies worldwide, so that the profits from seemingly legitimate business deals may actually fund Iranian terrorism," *Freeman II* ¶ 12, *Bowman* ¶ 12. It would be error to decide the question of their agency and legitimate functions as a *matter of law*, particularly where the amended complaints in *Freeman II* and *Bowman* note U.S. government findings that, *e.g.*, Defendants' co-conspirator, Bank Melli, "enabled the IRGC and its affiliates to move funds into and out of Iran, while the IRGC-QF, using Bank Melli's presence in Iraq, had used Bank Melli to pay Iraqi Shia militant groups." *Freeman II* ¶ 45, *Bowman* ¶ 44.

8. All three complaints plausibly allege that Defendant Bank Saderat PLC agreed to conceal and disguise financial transactions to evade counter-terror financing sanctions; that these evasive techniques were intended to, and did, give Iran "access to the international financial system enabl[ing] the Iranian regime *to facilitate its support for terrorism and proliferation*" (quoting U.S. government findings); that Bank Saderat provided at least $50 million of material support directly to Hezbollah (where Congress has found that *any* contribution to a Foreign Terrorist Organization facilitates its terrorist conduct); and that Bank Saderat was designated a Specially Designated Global Terrorist for its transfer of at least $50 million to Hezbollah.

Finally, during the October 28, 2019 oral argument on Plaintiffs' motion for partial reconsideration in *Freeman I*, the undersigned counsel noted that HLF, the principal defendant in *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*) ("*Boim III*"), was alleged to have sent "money principally to so-called zakat committees in the Palestinian territories. These included the Dar [E]l-Salam Hospital." Tr. 14:1-4. The Court then questioned whether the facts of that case involved "these intervening zakats, that could be likened to NIOC" here. Tr. 52:13-24. A district court decision after the *en banc* panel's ruling in *Boim III* provides a response to this query, confirming that HLF provided significant funding to multiple zakat committees and other organizations that were "either known fronts for Hamas, known supporters of Hamas, or entities whose funding is known to benefit the Hamas agenda." *Boim v. Quranic Literacy Inst.*, No. 00-cv-2905, 2012 WL 13171764, at *6 (N.D. Ill. Aug. 31, 2012) (internal record citations omitted). Dar El Salam Hospital was identified as one of those organizations, confirming that Hamas, like the IRGC, raises money through agents that – in the Court's words – "have legitimate as well as illegitimate purposes." Tr. 14:22-25.

**Letter to the Hon. Pamela K. Chen**

                Respectfully submitted,

                /s/ Gary M. Osen

cc: All counsel (by ECF)